30958. DAVIS *v.* AMERICAN MUTUAL LIABILITY INSURANCE COMPANY *et al.*

DECIDED SEPTEMBER 7, 1945.

*D. C. Sapp,* for plaintiff.
*Neely, Marshall & Greene,* for defendants.

SUTTON, P. J. J. O. Davis filed with the State Board of Workmen's Compensation a claim against J. A. Jones Construction Company, as employer, and the American Mutual Liability Insur-

ance Company, as insurance carrier, seeking compensation for an accidental injury arising out of and in the course of his employment. He was employed by J. A. Jones Construction Company as a "heater and shrinker," and claimed that, on June 12, 1943, while working in the deckhouse on a boat that was being constructed by his employer, he suffered heat exhaustion, which resulted in rendering him totally incapacitated for work. After several hearings, the director of the State Board of Workmen's Compensation made his findings of fact and entered an award denying compensation. On appeal, the award was approved by the full board, and thereafter was affirmed by the superior court of Glynn County. The claimant in his bill of exceptions makes three assignments of error, to wit: "(1) The directors acted without or in excess of their powers, in finding an award adversely to claimant without any competent evidence to support the finding. (2) There is not sufficient competent evidence in the record to warrant the directors in making the order or decree complained of. (3) The order or decree is contrary to law."

At the first hearing before the single director, it was admitted by counsel for the defendants that the claimant, on June 12, 1943, was employed by J. A. Jones Construction Company at a specified salary, and that the employer had notice or complaint of the alleged accident within due time; but it was denied that the claimant had suffered an accident arising out of and in the course of his employment.

The claimant testified substantially that, on June 12, 1943, he was employed as an electric welder—that is, as a heater and shrinker—which required the use of a heating torch, and was accompanied by a spray of water; that, on the afternoon of June 12, 1943, while heating the overhead in the deckhouse on boat 109, he suddenly turned blind and staggered off of a nail keg on which he was standing, and that he cut his torch off and staggered onto the deck of the boat, and suffered a pain in his left chest in the region of his heart; that, while standing out there cooling off, his foreman or leader-man, R. L. Lane, came by and the claimant explained to him that he had gotten too hot inside, and was told by Lane to stay outside and cool off, and he would probably be all right, Lane stating that in the meantime he would heat and shrink for him; and that Lane took the torch and heated and shrunk for

him while he cooled off, and in a little while thereafter came back to him and asked if he felt better, and the claimant told him that he did, and then took over his work and made two or three more heats and shrinks that afternoon before quitting time at 4:30 o'clock; that this was on Saturday afternoon, and on Sunday he was unable to work, but on Monday morning he decided he would try to go back to work, and that afternoon began feeling worse and was not able to make it, and went down and reported the incident to the clinic, and on Tuesday morning still was not feeling any better and went home; and that, since that time, he has not been able to do any work of any kind and has been going to his physician from once to twice a week and has been in bed approximately half of his time. He also testified that he had been examined by the shipyard's physician in October, 1943, and again immediately prior to the hearing of his case; and that, when the original hearing was scheduled for March 3, 1944, he had his attorney to telephone the director of the board and requested a postponement of the hearing, as he had suffered a heart attack and would not be able to attend the hearing; and he stated that he had suffered a heart attack about 10 o'clock on the Wednesday night before the scheduled hearing on March 3, 1944, and had had several of these attacks since then, sometimes from one to two a week.

The testimony of the claimant was contradicted by the witnesses for the defendants. R. L. Lane, the foreman or leader-man of the claimant, testified that the claimant was not working in the deckhouse on boat 109, on June 12, 1943, as he claimed, but that he was working on what was known as the mast house on the outside of the boat where the mast pole attaches, and was welding what is known as the stump. He testified that the claimant made no complaint to him of becoming overheated while on the job, and denied that he had relieved him, as the claimant contended. Lane's testimony was corroborated by L. H. Young, who was the foreman on the job; and Young testified that on the afternoon of June 12, 1943, he saw the claimant twice, and each time saw him working on the outside of the mast house, and that he also saw him that afternoon at quitting time, 4:30, and that the claimant just remarked it had been a warm day. He further testified that the first information he had with reference to a heat exhaustion alleged to have been

suffered by the claimant was when a representative of the insurance company came to see him some ten days after June 12, 1943.

The testimony of Dr. W. W. Sharp and Dr. Roy Lee Denny of Alma was taken in behalf of the claimant, and they testified to the effect that they had examined and had been treating him, and that in their opinion he was suffering from a depletion of chloride, excessive sweating, caused by overheating, and that the sodium chloride was so depleted that it created a condition of spasm of the muscle and lack of salt throughout the body. They also testified that he complained of pain in his left breast around his heart and pain in his left shoulder and arm, and that this would occur on slight exertion; but, in their opinion, he did not have any coronary or heart trouble. Dr. Robert E. Brown, as a witness for the defendants, testified, in part, that he went to Brunswick as medical director for the Brunswick Marine, which was taken over by J. A. Jones Construction Company; and that he made an examination of the claimant on October 25, 1943, and there was nothing to indicate to him from his examination that the claimant had previously suffered from heat exhaustion, but he was suffering from respiratory infection, that is, a cold with attendant complications. He further testified that, a depletion of sodium chloride or salt in the system is easily overcome by the introduction of salt into the system either by mouth or intravenously; that they had a number of cases where the symptoms subsided in a few minutes; and that a depletion of sodium chloride or salt in the system is not something which persists over a long period of time; but it can be remedied quite promptly. He further testified that, from the symptoms of the claimant as described by Dr. Sharp and Dr. Denny in their testimony—that the claimant complained of pain in his left side and down his shoulder and arm—the cause of such condition, in his opinion, was most likely angina pectoris, that is, heart trouble.

The director, after summarizing the evidence, made the following findings of fact: "The director finds from the preponderance of the testimony that the claimant has failed to carry the burden in establishing an accident arising out of and in the course of his employment. 'Burden of proof is upon the claimant to show that the accident or death resulting therefrom arises both out of and in the course of employment.' *American Mutual Liability Insur-*

ance Co. v. Harden, 64 Ga. App. 593; Travelers Insurance Co. v. Faulkner, 63 Ga. App. 438; Dorminy v. American Mutual Liability Insurance Co., 61 Ga. App. 301.

"The claimant testified emphatically that he was overcome by an attack of heat exhaustion due to working in a deckhouse on ship number 109 on June 12th. Yet he was unable to furnish any corroborating testimony from any employees that were working on this particular day in the deckhouse, although the director continued the case to give the claimant an opportunity to do so, when as a matter of fact his leader-man, Mr. Lane, testified that on June 12th, which was Saturday, the claimant was not working in the deckhouse, but was working out on top of the mast house. His testimony was corroborated by Mr. Young, who saw the claimant twice on the afternoon of June 12th, and each time he saw him he was working on the outside of the ship, and at 4:30 or quitting time the claimant passed Mr. Young, and remarked that it had been a warm day.

"The director concludes from the preponderance of the testimony that the claimant was not working in the deckhouse, but was working out on the mast house, which fact would repudiate the claimant's testimony that he had suffered a heat exhaustion and staggered out on the deck from the deckhouse.

"The director further finds that any disability the claimant may or may not be suffering at the present time is not the result of an accident arising out of and in the course of the employment as contemplated under [Code] § 114-102." He entered the following award: "Therefore, in accordance with the above and foregoing findings of fact and conclusions of law, it is hereby directed that this claim for compensation be and the same is hereby denied for the reasons hereinbefore stated."

A finding of the State Board of Workmen's Compensation that a claimant's injury did not arise out of and in the course of employment, supported by competent evidence, is conclusive, in the absence of fraud. Payton v. Fidelity & Casualty Co. of N. Y., 47 Ga. App. 747 (171 S. E. 392); Maryland Casualty Co. v. Sanders, 182 Ga. 594 (186 S. E. 693). It is provided by the Code, § 114-710, that, "The findings of fact made by the directors within their power shall, in the absence of fraud, be conclusive." This court and the Supreme Court have repeatedly ruled that, when the find-

ings of fact by the board are supported by any evidence, they are, in the absence of fraud, conclusive, and must be affirmed by the appellate courts. *U. S. Fidelity & Guaranty Co.* v. *Maddox,* 52 *Ga. App.* 416, 418 (183 S. E. 570); *American Mutual Liability Insurance Co.* v. *Sisson,* 198 *Ga.* 623, 625 (32 S. E. 2d, 295).

It is true, as contended by counsel for the plaintiff in error, that, if the employment of an employee contributes to the injury, it is an accident under our compensation law and is compensable, it matters not what combined with the employment to produce it. It might also be properly said that a finding denying compensation was not demanded under the evidence in this case. But, where the evidence was conflicting on the material issues involved and there was some competent evidence to support the findings and the award of the board, the same can not now be set aside by this court. Such findings and award stand on the same footing as the verdict of a jury which is authorized by the evidence and approved by the court.

Accordingly, the judge of the superior court did not err in affirming the award of the State Board of Workmen's Compensation.

*Judgment affirmed. Felton and Parker, JJ., concur.*